IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CSX TRANSPORTATION CO. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| NOVOLOG BUCKS COUNTY | : | NO. 04-4018 |

O'NEILL, J.                                                                                                                                              OCTOBER 16, 2008

MEMORANDUM

Plaintiff CSX Transportation Company filed a complaint on August 24, 2004 and an amended complaint on November 18, 2004 against defendant Novolog Bucks County for demurrage[1] charges assessed pursuant to 49 U.S.C. § 10746, the related rules promulgated by the U.S. Surface Transportation Board (STB) and CSX Tariff 8100 for Novolog's failure to release CSX's railcars in a timely manner. CSX sought $260,304 in demurrage charges plus interest and attorney fees. Specifically, CSX claimed that Novolog owed $214,632 in its capacity as a consignee for export steel and $45,672 in its capacity as a consignor for import steal. Novolog filed its answer and counterclaim on November 21, 2004 and an amended answer and counterclaim on December 15, 2004. Novolog prevailed on its counterclaim at trial, and it has no relevance to the issues before me. I granted summary judgment in favor of Novolog for

---

[1] Demurrage is "a charge exacted by a carrier from a shipper or consignee on account of a failure to load or unload cars within the specified time prescribed by the applicable tariffs. Railroads charge shippers and receivers of freight 'demurrage' fees if the shippers or receivers detain freight cars on the rails beyond a designated number of days." CSX Transp. Co. v. Novolog Bucks County, 502 F.3d 247, 251 n.1 (3d Cir. 2007). "CSX's Tariff 8100 is published by CSX on its web site and specifically incorporated into all its transportation agreements." Id. "After the enactment of the Interstate Commerce Commission Termination Act (ICCTA) in 1996, the Interstate Commerce Commission was replaced with the Surface Transportation Board (STB) and filing of tariffs was no longer required." Id.

CSX's claims for demurrage charges. On appeal, the Court of Appeals vacated my order granting summary judgment to Novolog and remanded for further proceedings. Before me now are defendant's motion for summary judgment after remand and plaintiff's reply.

## BACKGROUND

CSX and Novolog are businesses engaged in the interstate transportation of freight. CSX, a Virginia railroad shipping company with its principal place of business in Florida, is a rail common carrier that uses its railroad cars to move freight from origin to destination pursuant to instructions received from various shippers. Novolog, a Pennsylvania corporation with its principal place of business in Pennsylvania, operates a private railroad port on the Delaware River as a tenant at the U.S. Steel Fairless Works facility in Fairless, Pennsylvania. Novolog serves both as a port of origin and destination for cargo and is hired to load or unload cargo.

> The Court of Appeals has described the relationship between CSX and Novolog:
>
> As relevant here, the Novolog port functioned as a transfer point for the import, export, and domestic transportation of steel. Following instructions from various steel companies, CSX delivered to Novolog railcars loaded with steel, which Novolog unloaded and transferred onto other means of transportation. In addition, when Novolog so requested, CSX placed empty railcars at Novolog's disposal for loading with imported steel and transportation to domestic destinations. Novolog did not have an ownership interest in any of the shipments at issue here, but rather received and forwarded cargo on behalf of others and on their instructions.
>
> According to CSX's Tariff, a person receiving its railcars for unloading, or ordering empty railcars for loading, had two days to do so and return the cars to service; if the cars were kept beyond this time, demurrage charges would be assessed.[] In particular, CSX's Tariff Item 8070-G provided that "[u]nless otherwise advised [,] consignor at origin or consignee at destination will be responsible for the payment of demurrage rates."
>
> During the early part of 2003, fluctuations in the price of steel caused a significant increase in the amount of steel delivered for export to the Novolog facility. As a result, Novolog was unable to perform loading and unloading operations within the two-day time frame established by the Tariff, and CSX began charging Novolog demurrage fees,

which totaled $260,304 by August, 2003.  Novolog refused to pay, arguing it was not liable for demurrage since it was not a party to the bills of lading[2] or other contracts regarding the shipments at issue and had no responsibility for or control over the volume of railcars that entered its facility.

CSX Transp. Co. v. Novolog Bucks County, 502 F.3d 247, 250-51 (3d Cir. 2007).

As previously stated, CSX filed suit in this Court seeking payment of the demurrage charges with interest and attorney fees.  Novolog answered and included a counterclaim which is no longer at issue.  After discovery, CSX and Novolog filed cross-motions for summary judgment.  On May 24, 2006, I denied both parties' summary judgment motions.  I rejected CSX's theory that Novolog became subject to liability by accepting freight as the named consignee on the bills of lading or by ordering cars as the named shipper; I therefore declined to resolve the evidentiary issues or to make a finding of fact as to whether Novolog was indeed named as the consignee or as the shipper in the bills of lading.  I found however that a genuine issue of material fact remained as to whether a separate contractual agreement existed to make Novolog liable to CSX for the charges.  Thereafter, CSX filed an admission that "other than Novolog being the named consignee on bills of lading, and Novolog having accepted delivery of the loaded cars by CSX, CSX had no separate contractual relationship with Novolog governing the movement and/or disposition of the detained rail cars."  As a result I entered judgment as a matter of law in favor of Novolog on July 12, 2006.  CSX filed a motion for reconsideration which I denied as untimely.

---

[2] A bill of lading is "the basic transportation contract between the shipper-consignor and the carrier; its terms and conditions bind the shipper and all connecting carriers."  Id. at 251, quoting S. Pacific Transp. Co. v. Commercial Metals Co., 456 U.S. 336, 342 (1982).

CSX appealed to the Court of Appeals. The Court vacated my grant of summary judgment with respect to the claims based on consignee and consignor liability and remanded these claims to determine these issues consistent with its opinion. The Court held "that an entity named on a bill of lading as the sole consignee, without any designations clearly indicating any other role, is presumptively liable for demurrage fees on the shipment to which that bill of lading refers, but may avoid liability, if it is an agent, by following the notification provisions of 49 U.S.C. § 10743(a)(1)." Id. at 262. Further, the Court held that "although consignor liability is not regulated by 49 U.S.C. § 10743 or an analogous statutory provision, [it saw] no reason why the principles applicable to consignee liability under the statute should not be made equally applicable to consignor liability." Id. at 263. The Court specifically remanded to consider whether Novolog appeared as the consignee and/or shipper/consignor on the alleged bills of lading. The Court directed that I may also need to "determine whether Novolog was an agent in the instances in which it appeared as shipper or consignor . . . and, if so, whether it appropriately notified CSX of the relationship" but that determining whether Novolog was an agent with regard to Novolog's alleged capacity as the consignee would be unnecessary because it is undisputed that Novolog did not comply with the statutory notification provision for its alleged capacity as the consignee. Id. at 262-63.

Following remand, Novolog filed this motion for summary judgment.

STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is

4

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party moving for summary judgment has the burden of demonstrating that there are no genuine issues of material fact. Id. at 322-23. If the moving party sustains the burden, the nonmoving party must set forth facts demonstrating the existence of a genuine issue for trial. See Anderson, 477 U.S. at 255. Rule 56(e) provides that when a properly supported motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The adverse party therefore must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion, and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). However, the "existence of disputed issues of material fact should be ascertained by resolving 'all inferences, doubts and issues of credibility against'" the moving party. Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978), quoting Smith v. Pittsburgh Gage & Supply Co., 464 F.2d 870, 878 (3d Cir. 1972).

DISCUSSION

The Court of Appeals held that the consignee-agent provision of the Interstate Commerce Commission Termination Act, 49 U.S.C. § 10743(a)(1), governs whether CSX may assess demurrage charges against Novolog as the alleged consignee and/or consignor/shipper. CSX Transp. Co., 502 F.3d at 250, 263. It held that Novolog could be presumptively liable for demurrage charges if it is named on the bills of lading as the sole consignee and/or consignor/shipper unless it accepts the freight or orders the empty railcars as the agent of another and provides CSX with notice of its agency status in writing prior to delivery or shipment. Id. at 250, 263. The Court also found that if Novolog is named as consignee on the relevant bills of lading it is undisputed that Novolog did not comply with the notification provision, and therefore I need not determine whether Novolog's alleged agency status allows it to avoid liability. Id. at 262. Thus, the issues before me are whether Novolog appears on the alleged bills of lading as the sole consignee and/or consignor/shipper and, if so, whether in its capacity as consignor/shipper it acted as an agent and provided CSX proper notice of this status.

Novolog asserts that summary judgment is appropriate because CSX has not produced any evidence of the actual bills of lading at issue. Novolog argues that CSX's evidence of the bills of lading, including waybills[3] and John Underwood's testimony concerning the waybills, is

---

[3] A waybill is a "[w]ritten document made out by [the] carrier listing point of origin and destination, consignor and consignee, and describing goods included in shipment...." CSX Transp. Co., 502 F.3d at 251 n.4, quoting Black's Law Dictionary 1429 (5th ed. 1979). "According to the Sixth Circuit Court of Appeals, 'the bill of lading is a title document, while the waybill describes the freight, its route, and the carriers involved in its shipment. The waybill accompanies the freight throughout the shipment and into the hands of the destination carrier.'" Id., quoting Missouri Pacific R. Co. v. Escanaba and Lake Superior R. Co., 897 F.2d 210, 211 (6th Cir. 1990).

inadmissible evidence of the contents of the bills of lading and that no admissible evidence establishes the correspondence of each bill of lading to the demurrage charges in the twelve Original Incidental Bills. Additionally, Novolog argues that CSX received written notification indicating its agency status to avoid liability for demurrage charges sought against it for its alleged capacity as the consignor/shipper. CSX has submitted documents that it alleges show that for the instances it assessed demurrage charges against Novolog for delays in unloading or loading Novolog was listed as the sole consignee or consignor/shipper on the waybills. CSX asserts that each of the railcars which incurred demurrage charges is identified on the invoices, and the same railcars can be found on the waybills which identify the consignee or consignor/shipper as Novolog. CSX responds that this evidence is not hearsay, that a correspondence exists between the waybills and the demurrage charges in the Original Incidental Bills and that Novolog did not provide proper notice of its agency status.[4]

I.      Evidence of the Bills of Lading

Novolog alleges that CSX has not produced any evidence of the actual bills of lading because CSX's evidence of the waybills and Underwood's testimony are inadmissible hearsay that do not fall within the business records exception to the hearsay rule.[5] CSX argues that this

---

[4] CSX also states Novolog's motion for summary judgment on remand is untimely but provides no argument for this claim.

[5] The Court of Appeals noted that the record did "not clarify what significance, if any, the parties ascribe to the different role played by the waybills and the bills of lading that accompanied the shipments at issue." CSX Transp. Co., 502 F.3d at 251 n.4. Novolog has asserted that the waybills and Underwood's testimony are inadmissible hearsay. As appears hereinafter, I do not agree. Because Novolog has not asserted that CSX's claims fail because the waybills cannot be evidence of the contents of the bills of lading, I will not consider that issue. I note, however, that it appears that no paper bills of lading exist because shippers now employ electronic bills of lading which are used to generate the waybills.

evidence is not inadmissible hearsay and that, even if it is, the business records exception to the hearsay rule applies.

I may only consider admissible evidence in resolving a motion for summary judgment. Allstate Prop. & Cas. Ins. Co. v. Vargas, 2008 WL 4104542, at *4-5 (E.D. Pa. Aug. 29, 2008), citing Arnold Pontiac-GMC, Inc. v. Budd Baer, Inc., 826 F.2d 1335, 1339 n.3 (3d Cir. 1987). Hearsay not capable of being admissible at trial should not be considered. Id., citing Philbin v. Trans Union Corp., 101 F.3d 957, 961 n.1 (3d Cir. 1996). "[A] party must respond to a hearsay objection by demonstrating that the material would be admissible at trial under an exception to hearsay rule, or that the material is not hearsay." Arce v. U-Pull-It Auto Parts, Inc., 2008 WL 375159, at *14 (E.D. Pa. Feb. 11, 2008)

Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Hearsay statements are inadmissible except as specifically provided by the Federal Rules of Evidence, rules prescribed by the Supreme Court or an Act of Congress. Fed. R. Evid. 802. Novolog argues that the waybills are hearsay because CSX generates the waybills from information that unknown individuals allegedly imput into electronic bills of lading. The information in the waybills is not being offered to prove that the information entered into the bills of lading by the unknown individuals is actually true but merely that the bills of lading contained such information.[6]  It is not the truth of these representations CSX seeks to prove by

---

[6] Any argument by Novolog challenging the shippers unilateral decision to list Novolog as the consignee or consignor/shipper in the electronic bills of lading was already addressed by the Court which found Novolog could still be liable for demurrage in this situation if listed as consignee and/or consignor/shipper on the bills of lading. CSX Transp. Co., 502 F.3d at 257-62.

introducing the waybills as evidence of the bills of lading but merely the fact that such representations were made. Stendebach v. CPC Intern., Inc., 691 F.2d 735, 738-39 (5th Cir. 1982), noting that documents not offered to prove the truth of but merely the fact of their contents are not hearsay; U.S. v. Aspinall, 389 F.3d 332, 340 (2d Cir. 2004), noting that documents were not hearsay because they were not offered for the truth of their contents but for the fact that the statements were made. Therefore, these statements are not inadmissible hearsay.

Second, Novolog's argument that Underwood's testimony is inadmissible hearsay fails. Novolog argues that CSX is attempting to prove the truth of the purported bills of lading through Underwood's testimony. However, CSX is attempting to use the waybills and the demurrage bills to prove the contents of, not the truth of, the bills of lading. Underwood's testimony is used to authenticate the documents by describing how the waybills are generated, how to read the waybills and how to locate the information that shows a correspondence between the waybills and demurrage bills. Underwood could not testify if the information were not on the documents because he merely references the information and describes how it is generated. Because the waybills are not inadmissible hearsay, neither is Underwood's testimony explaining them.

Novolog also appears[7] to challenge Underwood's testimony in his affidavit characterizing the waybills and describing how the waybills are generated from the information on the electronically-entered bills of lading. Novolog claims that Underwood's affidavit fails to meet the requirements of Rule 56(e) which provides that an "affidavit must be made on personal

---

[7] Novolog's arguments for precluding Underwood's testimony address his characterization of the waybills but discuss the preclusion in a hearsay context. It appears that Novolog's intended argument is similar to that raised in its response to a motion for summary judgment prior to the appeal, and therefore I have also addressed this argument.

knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. Pro. 56(e)(1). Underwood's affidavit provides that his statements are made based on his personal knowledge and that his employment with CSX includes the review of demurrage bills and the supporting documentation. This establishes the basis for his knowledge and his ability to testify directly at trial about his familiarity with demurrage bills and waybills. J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990), noting that the evidence produced in an affidavit may be considered in a motion for summary judgment if the declarant could later present the evidence through direct testimony admissible at trial; Sea-Land Service, Inc. v. Lozen Intern., LLC., 285 F.3d 808, 819-20 (9th Cir. 2002), noting that an employment duty to be familiar with the waybills and bills of lading and statement affiant had personal knowledge were sufficient foundations for declaration; Gulf Rice Arkansas, LLC v. Union Pacific Railroad Co., 376 F. Supp.2d 715, 723 (S.D. Tex. 2005), noting that employment position and familiarity with the procedures involved established the affiant's personal knowledge. Underwood is testifying to explain the documents; CSX relies on the documents themselves for the information they provide. Thus, despite Novolog's arguments, personal knowledge does not require that Underwood be employed by CSX at the time the demurrage charges were assessed against Novolog, that he be familiar with Novolog in particular or that his assertions be sufficient to prove the information in the documents.

   Furthermore, even if CSX wanted to submit the waybills for the truth of the matter asserted, they would be admissible under the business records exception to the hearsay rule. Rule 803(6) allows the admission of business records despite hearsay statements in the records when the record is "made at or near the time by, or from information transmitted by, a person

with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make [the record], all as shown by the testimony of the custodian or other qualified witness." Fed. R. Evid. 803(6).  However, the exception does not apply if the "source of information or the method of circumstances of preparation indicate lack of trustworthiness." Id.

Novolog alleges that Underwood is not a qualified witness.  Novolog claims that the qualified witness needs to be someone "from th[e] shippers" who entered the information into the bills of lading.  Underwood is testifying about the waybill documents which are generated by CSX, not the intent of outside shippers.  Underwood is a qualified witness to testify with regard to the waybills because he regularly reviews such documents in the course of his employment and purports to have familiarity with the records.

However, an issues remains as to whether the information entered into the bills of lading by outside shippers can be included in CSX's waybills to permit the waybills to qualify as business records.  Business records can be derived in part from information provided by outside persons "[i]f the business entity has adequate verification or other assurance of accuracy of the information provided by the outside person." U.S. v. Sokolow, 91 F.3d 396, 403 (3d Cir. 1996) (citations omitted).  In this case, adequate verification exists for the information entered by the outside shippers.  The outside shippers enter the information electronically and CSX views the information in a waybill generated from the electronic entry and acts accordingly.  "It is immaterial that the business record is maintained in a computer rather than in company books." United States v. Catabran, 836 F.2d 453, 457 (9th Cir. 1988) (citation and internal quotation marks omitted).  A "data compilation, in any form," is admissible so long as the compilation

meets the requirements of Rule 803(6).  Id.  Thus, the shippers' electronic entries result in the shipments being loaded or unloaded by the appropriate entities because CSX has no choice but to deliver the railcar to the named consignee or consignor/shipper.  Novolog does not claim that it never received, or was not supposed to receive, the railcars at issue for loading or unloading, but solely claims that it is not liable for the demurrage for the delays in loading or unloading these railcars.  Because Novolog does not allege that it did not order the railcars for loading or was not supposed to receive the railcars for unloading, adequate verification exists to support the accuracy of the information used to generate the waybills and conduct CSX's business.

Additionally, Underwood's testimony provides the necessary elements to establish the hearsay exception.  First, even if the waybills that designated Novolog as the alleged consignee or consignor/shipper were not generated at the moment the shipment order occurred they were produced from electronic information that was generated contemporaneously with the order.  See Sea-Land Service, Inc. v. Lozen Intern., LLC., 285 F.3d 808, 819-20 (9th Cir. 2002), noting that documents satisfy the business record requirement if produced from electronic information generated contemporaneously.  Second, Underwood's testimony establishes that the waybills are kept in the course of CSX's regularly conducted business activity.  Underwood explains that CSX generates the waybills because it is the only way CSX can view the information in the electronic bills of lading entered by the shippers and act pursuant to the information.  Moreover, for all of the reasons discussed above, the waybills do not lack trustworthiness.  See Rule 803(6).

Novolog's challenge to the admissibility of CSX's evidence fails, and therefore Novolog has not shown that no genuine issue of material fact exists.  I will deny Novolog's motion for summary judgment on this claim.

II.      Connection Between the Bills of Lading and Demurrage Charges

Novolog alleges that CSX has failed to provide any evidence that the waybills correspond to the demurrage charges in the Original Incidental Bills. Novolog claims that the waybill numbers on the twelve Original Incidental Bills at issue are 096822, 097969, 099769, 095406, 095407, 097487, 097488, 098952, 099357, 099270 and 099271. It further claims that none of these waybill numbers correspond to the waybill numbers set forth on waybills CSX-0169 through CSX-0929 because these waybill numbers begin with the number "8." Novolog also claims that the waybill dates do not correspond to the Original Incidental Bills and that no information supports correspondence between CSX-1003 through CSX-1171 and the twelve Original Incidental Bills.

CSX responded that the railcar numbers on the waybills and Original Incidental Bills provide the link between the two documents. This can be seen in the example of railcar numbers 483009, 482502, 482891 and 482872 on waybills numbered CSX-0370-371, CSX-0372-373, CSX-037-375 and CSX-0376-377. These railcar numbers appear on the April 15, 2003 Original Incidental Bill at issue which are Bates-labeled CSX-0012-0018. CSX has shown that a genuine issue of material facts exists. Novolog's claim that the waybill numbers do not correspond with the demurrage invoices further establishes the existence of a genuine issue of material fact. At trial, however, CSX will bear the burden of proving the alleged connection of each waybill to its corresponding Original Incidental Bill at least as clearly as in the example provided so that the jury can easily find the railcar numbers in the voluminous record. I will deny Novolog's motion for summary judgment on this claim.

III.     Notification

Novolog alleges that, even if it is designated as the consignor/shipper, CSX had notice of Novolog's transloader status and therefore Novolog is not liable for the demurrage. The Court held that the entity named as consignor or shipper on the bill of lading would be liable unless it had ordered the empty railcars as an agent of another and had so notified the carrier in writing at the time of the request or unless, if another entity had designated it as consignor, it notified the carrier prior to shipment. CSX Transp. Co., 502 F.3d at 263.

First, Novolog claims that I previously ruled that CSX's supporting documentation for the Original Incidental Bills "listing Novolog as the shipper and the port of origin as Fairless, PA were Novolog-generated documents showing the port of origin to be Fairless, PA (Shared Assets), the shipper to be various steel companies, the consignee to be various other steel companies at various destinations, and the route to be via CSX." Novolog claims that this statement is the law of the case. "The law of the case doctrine limits relitigation of an issue once it has been decided in an earlier stage of the same litigation." Hamilton v. Leavy, 322 F.3d 776, 786-87 (3d Cir. 2003). However, when I mentioned the Novolog-generated documents in my previous opinion, I did so in the context of reciting the evidence provided by the parties in the background section. CSX Transp. Co. v. Novolog Bucks County, 2006 WL 1451280, at *3 n.2 (E.D. Pa. May 24, 2006). My reference to the evidence in this section does not constitute an issue decided in an earlier stage of this litigation. Moreover, my decision in the prior opinion did not require me to address the evidentiary issues and therefore I did not address the issues Novolog now claims have been determined and are the law of the case. Id. at *4 n.6.

14

Second, Novolog claims that no genuine issue of material fact exists because the record shows that CSX received written notification from Novolog indicating that another entity was the consignor/shipper. Novolog claims that documents CSX-078, CSX-0079, CSX-0081, CSX-0084, CSX-0090, CSX-0092, CSX-0094 and CSX-0134 support its claim that it gave notice to CSX because the documents designate another entity as the shipper and consignee rather than Novolog. CSX alleges that Novolog did not provide notice at the time of the request for the railcar or prior to shipment. CSX argues a factual issue exists because the documents Novolog relies on to show notice are dated after the dates the railcars were ordered/requested and placed/shipped as shown on the allegedly corresponding Original Incidental Bill at issue. For example, the date on CSX-0078 is "10/25/04." The railcar numbers on this document are also found on Original Incidental Bill CSX-0070. CSX-0070 lists the dates these railcars were ordered as either "1011" or "1018" and the dates these railcars were placed as either "1015" or "1019." These dates, purported to indicate when the railcars were requested or shipped, allegedly occurred before 10/25/04 which is the date on the document that Novolog claims provided CSX with notice. Novolog does not contest that it ordered the railcars, that it ordered them on the listed dates or that the railcars were shipped on the listed dates. Thus, CSX has established that a genuine issue of material fact exists as to whether Novolog provided notice of its transloader status at the time of the order or prior to shipment to avoid demurrage. At trial, Novolog will bear the burden of proving that it provided such notice as to each railcars at issue. I will deny Novolog's motion for summary judgment on this claim.

An appropriate ORDER follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CSX TRANSPORTATION CO. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| NOVOLOG BUCKS COUNTY | : | NO. 04-4018 |

O'NEILL, J.                                                                                   OCTOBER 16, 2008

ORDER

AND NOW, this 16th day of October 2008, upon consideration of defendant Novolog Bucks County's motion for summary judgment and plaintiff's response, and for the reasons set forth in the accompanying memorandum, it is ORDERED that Novolog Bucks County's motion for summary judgment is DENIED.

       /s/ Thomas N. O'Neill, Jr. J.
       THOMAS N. O'NEILL, JR., J.