IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CSX TRANSPORTATION CO.　　　　:　　　　CIVIL ACTION
　　　　　　　　　　　　　　　　:
　　　　v.　　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
NOVOLOG BUCKS COUNTY　　　　　:　　　　NO. 04-4018

O'NEILL, J.　　　　　　　　　　　　　　　December 14, 2009

MEMORANDUM

On October 8, 2009, plaintiff CSX Transportation Co. moved for partial summary

judgment on its claims against defendant Novolog Bucks County for certain demurrage charges.

Novolog moved to strike CSX's motion on October 16, 2009, and on October 28, 2009 filed a

response in opposition to CSX's motion.  CSX filed a reply to Novolog's response in opposition

on November 16, 2009, which by Order dated November 2, 2009, will also be considered CSX's

opposition to Novolog's motion to strike.  The issues raised in the motions now are briefed fully

and ripe for decision.  For the reasons set forth below I will deny CSX's motion for partial

summary judgment and deny Novolog's motion to strike.

BACKGROUND[1]

Many of the underlying facts giving rise to this dispute are set forth in this Court's

opinion on the parties' cross motions for summary judgment, CSX Transp. Co. v. Novolog

Bucks County, 2006 WL 1451280, at *1-4 (E.D. Pa. May 24, 2006) ("CSX I"), the Court of

Appeals' opinion vacating portions of that opinion and Order and remanding the case, CSX

Transp. Co. v. Novolog Bucks County, 502 F.3d 247, 250-52 (3d Cir. 2007) ("CSX II"), as well

as this Court's opinion denying Novolog's motion for summary judgment following remand,

_____

[1]　　　　The following facts are not in dispute unless indicated.

CSX Transp. Co. v. Novolog Bucks County, 2008 WL 4613862 (E.D. Pa. Oct. 16, 2008) ("CSX III").

A.      Factual Background

CSX is a rail common carrier.  Novolog is a private port with access to a rail-served industrial facility on the Delaware River which during the relevant period served as a transfer point for the import, export and domestic transportation of steel.  CSX received and followed directions from steel companies to deliver railcars loaded with steel to the Novolog port. Novolog received the railcars from CSX and then unloaded and transferred the steel onto other means of transportation.  Sometimes Novolog ordered empty railcars from CSX to be placed at Novolog's port for loading with imported steel and transporting to domestic destinations.[2] Novolog did not have an ownership interest in any of the shipments at issue here, but rather received and forwarded cargo on behalf of others and on their instructions.

CSX's tariff requires a person who receives its railcars for unloading or who orders empty railcars for loading to return those cars to service within two days.  CSX assesses demurrage charges when the cars are kept beyond this time.

During the early part of 2003, due to fluctuations in the price of steel, there was a significant increase in the amount of steel delivered for export to the Novolog port.  The influx prevented Novolog from loading and unloading certain railcars within the two-day time frame. CSX charged Novolog demurrage fees totaling $260,304 as of August, 2003.  Novolog refused to

_____

[2]      "[Novolog] would only [order railcars] in situations where it was a facilitation to help a customer, and in those cases Al Griffiths would have dialogue with people like Robert Yarlott or Bill McClusky, NS and they would try to coordinate that more as a customer service." Def. Br. in Opp., Exh. A, Reid Depo. Tr. at 75:1-9.

pay and CSX brought this action.

B.    Procedural History

CSX filed a complaint on August 24, 2004 and an amended complaint on November 18,

2004 against Novolog for demurrage charges assessed pursuant to 49 U.S.C. § 10746, the related

rules promulgated by the U.S. Surface Transportation Board and CSX Tariff 8100 for failure to

release CSX's railcars in a timely manner.  CSX's amended complaint seeks $260,304 in

demurrage charges plus interest and attorneys fees, claiming Novolog owes $214,632 in

unloading demurrage charges and $45,672 in loading demurrage charges.  Novolog filed its

answer and counterclaim on November 21, 2004 and amended answer and counterclaim on

December 15, 2004.  Novolog prevailed on its counterclaim at trial and that has no relevance to

the issues before me now.

After discovery, the parties filed cross-motions for summary judgment.  On May 24,

2006, I denied both parties' summary judgment motions regarding the demurrage dispute.  CSX

I, 2006 WL 1451280, at *18.  I did not decide the evidentiary issues or make a finding of fact as

to whether Novolog was named as the consignee or as the shipper in the bills of lading.  Id. at *3

n.3-5, *4 n.6.  I held that summary judgment was inappropriate because there remained an issue

of material fact as to whether Novolog had entered into a separate contractual agreement with

CSX that might make it liable for the charges.  Subsequently, CSX filed an admission that "other

than Novolog being the named consignee on bills of lading, and Novolog having accepted

delivery of the loaded cars by CSX, CSX had no separate contractual relationship with Novolog

governing the movement and/or disposition of the detained rail cars."  I then entered judgment as

a matter of law in favor of Novolog on July 12, 2006.

On appeal by CSX, the Court of Appeals held in relevant part:

> We hold that the consignee-agent provision of the Interstate
> Commerce Commission Termination Act, 49 U.S.C. § 10743(a)(1),
> governs this dispute as to the charges assessed against Novolog as the
> consignee of freight. Under this provision a transloader or other such
> entity, if named on the bill of lading as the sole consignee, is
> presumptively liable for demurrage charges arising from unloading
> delays, unless it accepts the freight as the agent of another and
> notifies the carrier of its status in writing prior to delivery. Because
> the factual record was not sufficiently developed, however, we cannot
> determine what the bills of lading showed here; thus we vacate the
> District Court's order granting judgment to the transloader as a matter
> of law and remand for further proceedings.
>
> With respect to the transloader's potential liability for demurrage
> charges in its role as the shipper (consignor) of freight, we refrain
> from announcing a holding because the question was not fully
> addressed or briefed, but we will vacate the District Court's grant of
> judgment on this claim as well and remand it for further consideration
> in light of our holding regarding consignee liability.

CSX II, 502 F.3d at 250.

Following remand, Novolog moved for summary judgment against CSX. Novolog had

three primary arguments. First, it argued CSX had not produced any evidence of the actual bills

of lading at issue. I held that the waybills and testimony of John Underwood are not hearsay and

denied Novolog's motion based on the admissibility of CSX's evidence. CSX III, 2008 WL

4613862, at *4-5. Second, Novolog claimed CSX could not provide any evidence that the

waybills correspond to the demurrage charges on CSX's Original Incidental Bills. I held that a

genuine issue of material fact existed because CSX was able to demonstrate with respect to a few

waybills and OIBs that the railcar numbers linked the two documents. Id. at *7. Finally,

Novolog claimed that CSX received written notification of Novolog's agency status thereby

4

permitting Novolog to avoid liability for loading demurrage charges. I held that CSX demonstrated a genuine issue of material fact existed as to whether Novolog provided notice of its agency status at the time of the order or prior to shipment. Id. at *8.

## STANDARD OF REVIEW

Rule 56© of the Federal Rules of Civil Procedure provides that summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the burden of demonstrating that there are no genuine issues of material fact. Id. at 322-23. If the moving party sustains the burden, the nonmoving party must set forth facts demonstrating the existence of a genuine issue for trial. See Anderson, 477 U.S. at 255.

When a properly supported motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory

allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). However, the "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the moving party. Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978), citations and quotation marks omitted.

DISCUSSION

## I.      Preliminary Matters

### A.      Defendant's Motion to Strike Plaintiff's Motion for Partial Summary Judgment

Novolog moves to strike CSX's motion for partial summary judgment arguing it was untimely filed. Novolog notes that by Order of December 13, 2005, the parties had until January 6, 2006 to file dispositive motions and that CSX filed a motion for summary judgment on that date. Furthermore, my Order of August 12, 2009, which followed the Court of Appeals' remand, listed the trial date as November 2, 2009 and instructed the parties to file amended pretrial memoranda and points for charge on or before October 16, 2009; it did not provide for the filing of dispositive motions.

I will consider CSX's motion even though it was filed well after the original scheduling Order's cut-off date and the Order of August 12 does not provide for filing dispositive motions. Federal Rule of Civil Procedure 16(b)(3)(A) directs that "[t]he scheduling order must limit the time to . . . file motions," but also provides that the scheduling order may be modified for "good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). I find good cause to consider CSX's motion for three reasons. First, consideration of the motion will help expedite the disposition of this action and narrow the issues for trial. See Brooks v. Cook , No. 92-56232,

6

1994 WL 232272, at *1 (9th Cir. May 31, 1994); <u>Spiller v. Ella Smithers Geriatric Center</u>, 919

F.2d 339, 343 (5th Cir. 1990).  Second, Novolog filed a motion for summary judgment after

remand despite the fact that the post-remand scheduling order did not include dates for filing

such motions; I considered Novolog's motion and denied it on October 16, 2008.  Finally,

Novolog does not argue that CSX's present motion prejudices or harms Novolog.

### B.    <u>Statute of Limitations</u>

Novolog argues that all of CSX's claims are barred by the statute of limitations found in §

10743[3] because CSX never amended its complaint to state specifically that it was bringing a

cause of action pursuant to 49 U.S.C. § 10743(a)(1).  CSX filed its complaint on August 24,

2004 and amended complaint on November 18, 2004.  Neither complaint specifically cite 49

U.S.C. § 10743(a)(1) as a basis for recovery of demurrage.

CSX's claims are not time-barred under the statute.  First, by basing its holding on 49

U.S.C. § 10743(a)(1), the Court of Appeals inherently acknowledged that CSX's complaint was

adequately pled and identified this statute as a theory upon which CSX could recover.  Second,

CSX clearly seeks to recover demurrage in the complaint.  This put Novolog on notice that CSX

was seeking recovery of those charges pursuant to a legal theory based upon 49 U.S.C. §

10743(a)(1).  Third, there is no requirement that CSX specifically cite the statute itself.  <u>See</u> Fed.

R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").  My conclusion is confirmed

_____

[3]        Section 10743(c)(1) provides:

> A rail carrier may bring an action to enforce liability under subsection
> (a) of this section.  That rail carrier must bring the action [within 3
> years after the claim accrues] or by the end of the 6th month after
> final judgment against it in an action against the consignee, or the
> beneficial owner named by the consignee or agent, under that section.

by observing that even if CSX were to amend its complaint to cite the statute specifically the complaint would not need to allege any additional facts to support the statutory claim. For the foregoing reasons, I reject this argument by Novolog.

### C.    CSX's Supplementation of Discovery

Novolog argues that I may not rely on and CSX may not be permitted to rely on at trial documents produced and witnesses identified by CSX after the close of discovery on December 16, 2005. Federal Rule of Civil Procedure 37(c)(1) governs this issue and provides:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

Specifically, CSX produced the following documents on September 18, 2009:

•    Waybills bates-stamped CSX-S 1-20 and 31-32 in support of OIB 8818431 totaling $3,240 in demurrage charges;

•    Waybills bates-stamped CSX-S 21-28 in support of OIB 1852201 totaling $5,040 in demurrage charges; and

•    Waybills bates-stamped CSX 29-30 in support of OIB 2389014 totaling $480.

Novolog argues it will be harmed by the introduction of these waybills because it did not have an opportunity to review the documents during the discovery period. These waybills are virtually identical to numerous other waybills produced by CSX during discovery. While produced only weeks before CSX filed its motion for summary judgment, Novolog did not seek an extension of time to respond due to its need to review the new documents. Novolog does not explain why receipt of this handful of waybills after discovery harms its ability to rebut or challenge the

documents. Because I find Novolog has not demonstrated that it was harmed by the production of these additional waybills, I will not exclude the documents.

CSX attached as an exhibit to its motion for partial summary judgment a summary of all of the waybills upon which it relies to support its motion. This summary is bates-stamped CSX-S 31-43. CSX filed its motion that included this summary on October 8, 2009 and Novolog responded on October 28, 2009. Again, I note that Novolog did not seek an extension of time to respond because it needed more time to review the summaries. Furthermore, these pages are merely a summary of the contents of documents which Novolog already had in its possession prior to CSX's filing. I find that Novolog is not harmed by the introduction of these summaries and I will not exclude them.

Finally, Novolog argues that CSX improperly supplemented its initial disclosures when it identified Robert Yarlott as an additional witness on September 18, 2009. Novolog states that it is harmed by the supplementation because it did not have an opportunity to cross-examine Yarlott. Again, Novolog neither requested to depose Mr. Yarlott after he was identified by CSX nor sought an extension to respond to CSX's motion based on the new witness. Novolog has failed to show how it was harmed by the identification of the new witness, especially in light of the Novolog-produced documents which CSX attaches to its reply showing that David Reid and others at Novolog communicated directly with Yarlott about the very issues central to this dispute. I will not exclude Yarlott as a witness but Novolog may take his deposition prior to trial.

**II.** **Demurrage**

**A.** **Unloading (Consignee) Demurrage**

CSX moves for entry of partial summary judgment for $116,640.00 in unloading, or consignee, demurrage charges. CSX received directions from steel companies to deliver railcars loaded with steel to the Novolog port. CSX claims Novolog failed to unload and transfer the steel onto other means of transportation within the two day time period permitted by CSX's tariff. The demurrage charges appear on seven OIBs directed to Novolog dated between October 2002 and August 2003[4]: 1243228, 8818431, 6575329, 5357918, 1852201, 1963966 and 2389014. The OIBs contain, in relevant part, the railcar initial and number (e.g. CSXT 482818) of the railcars delivered the prior month, the dates they were placed at the Novolog port for unloading and the dates they were released. CSX also provides waybills which it alleges are associated with each OIB.[5] The waybills contain, in relevant part, the railcar initial and number

---

[4] The Underwood affidavit states that "[f]rom December of 2002 through August of 2003, Novolog received monthly Original Incidental Bills as the named consignee, for failure to return rail cars in a timely manner . . ." Underwood (Third) ¶ 9 (emphasis added). However, CSX attached OIB 5357918 dated October 15, 2002 for unloading demurrage. Pl.'s Br., Exh. A Underwood Aff., Exh. 1.

[5] In a footnote to Novolog's brief in opposition, it requests sanctions against CSX pursuant to 28 U.S.C. § 1927 because the affidavit of John Underwood contradicts an earlier affidavit he executed. (D.E. No. 22 Feb. 7, 2006). Section 1927 provides, "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Even assuming CSX, through Underwood's earlier affidavit, was mistaken in stating that all waybill information had been produced and that Novolog was listed as the consignee on each waybill, this conduct does not rise to the level of conduct at which § 1927 is directed. Novolog has made a reasonable attempt to prove the connection between each OIB and Novolog. At the very least, Novolog's request is premature since CSX has not yet had the opportunity of a trial to prove the remainder of its claims. I will deny Novolog's request for sanctions.

of the railcar ordered for delivery at the Novolog port, the waybill date and the consignee, i.e.

"Novolog Bucks County Inc."  The affidavit of John Underwood explains that the railcar initial

and number located on the waybills can be matched to the OIBs and that "this [connection]

confirms that the waybill is the controlling waybill for the move which resulted in the demurrage

charges assessed in the bill."  Underwood (Third) ¶ 20.  Underwood uses railcar CSXT 482818

as an example to demonstrate how the waybill and the OIB associated with the unloading

demurrage charge for this car are connected.  First, Underwood notes the railcar initial and

number appear on both the waybill and OIB.  Next, Underwood notes that the waybill for this

railcar is dated March 16, 2003; the OIB states that this railcar was placed on "0326"--which

Underwood explains translates to March 26, 2003--and was not released until "0406"--or April 6,

2003--resulting in 14 days of demurrage charges at $60.00 per day.  Underwood explains "this

railcar was placed at Novolog's facility for unloading approximately one week to ten days after

the date on the waybill (March 16, 2003), which is what would have been expected due to transit

time."  Id. at ¶ 24.  Underwood states, "[e]ach and every railcar which appears on the

spreadsheets attached to this Affidavit at Exhibit 3 can similarly be matched up with a waybill

which identifies Novolog as the consignee and a line item on an Original Incidental Bill (Exhibit

1)."  Id. at ¶ 26.

    The Court of Appeals provided specific instructions for determining unloading demurrage

charges.  It held that,

> that the consignee-agent provision of the Interstate Commerce
> Commission Termination Act, 49 U.S.C. § 10743(a)(1), governs this
> dispute as to the charges assessed against Novolog as the consignee
> of freight.  Under this provision a transloader or other such entity, if
> named on the bill of lading as the sole consignee, is presumptively

liable for demurrage charges arising from unloading delays, unless it
accepts the freight as the agent of another and notifies the carrier of
its status in writing prior to delivery. Because the factual record was
not sufficiently developed, however, we cannot determine what the
bills of lading showed here; thus we vacate the District Court's order
granting judgment to the transloader as a matter of law and remand
for further proceedings.

502 F.3d at 250. In deciding CSX's motion for partial summary judgment, I must follow the

holding of the Court of Appeals: "recipients of freight who are named as consignees on bills of

lading are subject to liability for demurrage charges arising after they accept delivery unless they

act as agents of another and comply with the notification procedures established in ICCTA's

consignee-agent liability provision, 49 U.S.C. § 10743(a)(1)." Id. at 254.[6] The Court restated its

holding:

> [W]e hold that an entity named on a bill of lading as the sole
> consignee, without any designations clearly indicating any other role,
> is presumptively liable for demurrage fees on the shipment to which
> that bill of lading refers, but may avoid liability, if it is an agent, by
> following the notification provisions of 49 U.S.C. § 10743(a)(1). On
> remand, the District Court should determine whether Novolog
> appeared as the consignee on the relevant bills of lading. Because it
> is undisputed that Novolog did not comply with the statutory
> notification provision, it will be unnecessary to determine whether it
> acted as an agent in the instances where it was named as the
> consignee.

502 F.3d at 262. Novolog presents several arguments as to why CSX is not entitled to summary

judgment; because some of these arguments apply to both unloading and loading demurrage

---

[6]     Section 10743(a)(1) states a consignee must give "written notice to the delivering
carrier before delivery of the property (A) of the agency and absence of beneficial title; and (B)
of the name and address of the beneficial owner of the property if it is reconsigned or diverted to
a place other than the place specified in the original bill of lading."

charges, I will consider the arguments' application to both types of charges at the same time.[7]

### 1. Proof of Delay and Fault

Novolog argues that CSX has failed to "meet its initial burden to show that each railcar at issue was either unloaded or loaded in an untimely manner by Novolog and any alleged delay in unloading or loading each of those railcars was not caused by CSX." Def.'s Br. in Opp., at 6 (citing CSX I, No. 04-4018, 2006 WL 1451280, at *7). At the outset, I question whether I need to engage in the issue of determining fault. The Court of Appeals made clear that the inquiry on remand with which I primarily am concerned is whether CSX can prove Novolog was named the consignee on the bills of lading.

Assuming that I should engage in this inquiry, I find CSX has demonstrated that each railcar for which it seeks partial summary judgment was unloaded or loaded in an untimely manner.[8] CSX has presented the OIBs for the loading and unloading demurrage charges which disclose the day the railcar was delivered and released and, thus, that there was a delay in releasing the railcar. Novolog has not rebutted this evidence of delay with any evidence demonstrating that there was not a delay or that the OIBs are inaccurate.

Furthermore, both CSX and Novolog agree that the delays during the relevant time period

---

[7]    At the outset, Novolog states that CSX "concedes it cannot prove" the full amount of damages sought in CSX's amended complaint because CSX seeks only partial summary judgment. I do not construe CSX's motion for partial summary judgment as a "concession," but rather an attempt to dispose of a portion of the action on motion for summary judgment. Novolog's request for attorneys fees and costs based on the allegation that CSX has committed wrongful conduct because CSX does not seek summary judgment on all of its claims will be denied.

[8]    The Court stated in its Factual and Procedural Background section, "Novolog was unable to perform loading and unloading operations within the two-day time frame established by the Tariff . . . ." 502 F.3d at 251.

were a result of "fluctuations in the price of steel [which] caused a significant increase in the amount of steel delivered for export to the Novolog facility." 502 F.3d at 251. Novolog has presented no persuasive evidence demonstrating that the delays were caused by anything other than the changes in the price of steel--which was not caused by CSX.[9]

### 2.    Waybill v. Bill of Lading

Next, Novolog argues that CSX's partial motion for summary judgment for unloading demurrage must be denied because CSX has produced no bills of lading to substantiate the OIBs. Instead, CSX relies on waybills to prove Novolog's liability for unloading demurrage.[10]

The Court of Appeals discussed the distinction between bills of lading and waybills in footnotes to its opinion:

> A bill of lading is 'the basic transportation contract between the shipper-consignor and the carrier; its terms and conditions bind the shipper and all connecting carriers.'

502 F.3d at 251 n.2, quoting S. Pacific Transp. Co. v. Commercial Metals Co., 456 U.S. 336, 342 (1982).

> A waybill is a '[w]ritten document made out by [the] carrier listing point of origin and destination, consignor and consignee, and describing goods included in shipment . . . ." Black's Law Dictionary

_____

[9]    Novolog suggests that the deposition testimony of David Reid, Novolog's former president, shows the delays were caused by CSX. Reid testified that "CSX had undertaken to move more traffic during a very short period of time than the system could adequately handle," Def. Br. in Opp., Exh. A Reid Dep. Tr., at 162:1-4. However, Reid's testimony confirms that the reason CSX undertook to move so many railcars was because these cars were being ordered by customers to move steel due to the "export bubble." Id. at 197-8.

[10]    The affidavit of John Underwood explains that "shippers sometimes provide CSX with the information for the bills of lading in electronic format ("EDI") only" and that in those situations "the only way CSX can view this information . . . is in the form of a waybill." Pl. Br., Exh. A, Underwood Aff. (Third) ¶ 7.

1429 (5th ed.1979). According to the Sixth Circuit Court of Appeals, 'the bill of lading is a title document, while the waybill describes the freight, its route, and the carriers involved in its shipment. The waybill accompanies the freight throughout the shipment and into the hands of the destination carrier." <u>Missouri Pacific R. Co. v. Escanaba and Lake Superior R. Co.</u>, 897 F.2d 210, 211 (6th Cir. 1990). **The record does not clarify what significance, if any, the parties ascribe to the different role played by the waybills and the bills of lading that accompanied the shipments at issue.**

502 F.3d at 251 n.4 (emphasis added).

The Court of Appeal's held that a consignee named on the bill of lading is presumptively liable. <u>See</u> 502 F.3d at 250 ("a transloader or other such entity, if named on the <u>bill of lading</u> as the sole consignee, is presumptively liable for demurrage charges . . ."); <u>id.</u> at 262 ("we hold that an entity named on a <u>bill of lading</u> as the sole consignee . . . is presumptively liable for demurrage fees on the shipment to which that <u>bill of lading</u> refers . . . On remand, the District Court should determine whether Novolog appeared as the consignee on the relevant <u>bills of lading</u>."); and <u>id.</u> at 254 ("recipients of freight who are named as consignees on <u>bills of lading</u> are subject to liability for demurrage charges . . .") (emphases added).

Novolog argues that the waybills cannot be considered evidence of the content of the relevant bills of lading because the bills of lading themselves are the best evidence of their contents.[11] Federal Rule of Evidence 1002 provides, "[t]o prove the contents of a writing . . . the original writing . . . is required . . ." I consider the waybills presented by CSX only as evidence that Novolog was listed as a consignee on the waybill. They cannot be considered evidence of

---

[11] Novolog also argues that the waybills are inadmissible hearsay pursuant to Federal Rules of Evidence 801© and 802. In my October 16, 2008 Order, I ruled that the waybills are admissible for the truth of the matter asserted under the business records exception to the hearsay rule. <u>CSX III</u>, 2008 WL 4613862, at *5-6 (<u>citing</u> Fed. R. Evid. 803(6)).

the contents of the bills of lading.

However, the waybill evidence can still be considered evidence that Novolog was a consignee for these orders.[12] The Court of Appeal's rationale with respect to why consignees are presumed liable for demurrage does not require me to restrict my review of the facts to bills of lading. The Court looked to the language of the ICCTA which creates a presumption that consignees are liable for demurrage. The ICCTA does not require the consignee to be named in the bill of lading. The provision states in relevant part:

> Liability for payment of rates for transportation for a shipment of property by a shipper or consignor to a consignee other than the shipper or consignor, is determined under this subsection when the transportation is provided by a rail carrier under this part. When the shipper or consignor instructs the rail carrier transporting the property to deliver it to a consignee that is an agent only, not having beneficial title to the property, the consignee is liable for rates billed at the time of delivery for which the consignee is otherwise liable, but not for additional rates that may be found to be due after delivery if the consignee gives written notice to the delivering carrier before delivery of the property-
> (A) of the agency and absence of beneficial title; and
> (B) of the name and address of the beneficial owner of the property if it is reconsigned or diverted to a place other than the place specified in the original bill of lading.

49 U.S.C. § 10743(a)(1). The Court's subsequent analysis of this section also refers to "the named consignee and recipient of the freight" without specifying whether the named consignee is named in the bill of lading or in some other document. 502 F.3d at 255-56.

Furthermore, the Court's discussion of the definition of "consignee" does not limit that

---

[12]      At trial, Novolog may rebut CSX's waybill evidence if it can produce evidence to prove either that it was not a consignee--thereby showing it is not presumptively liable--or that it was acting as an agent of another--thereby rebutting the presumption of liability--with respect to the railcar orders for which Novolog seeks to recover demurrage.

term only to consignees named in a bill of lading. 502 F.3d at 257-58 (noting that the ICCTA does not define the term "consignee" or its cognates, that the term ordinarily means "nothing more than the person to whom cargo is delivered following instructions (<u>citing</u> Webster's Third New International Dictionary (1971)) (defining "consignee" as "one to whom something is consigned or shipped")); Black's Law Dictionary (6th ed. 1990) (defining "consignee" as "[o]ne to whom a consignment is made [; p]erson named in bill of lading to whom or to whose order the bill promises delivery; [i]n a commercial use, . . . one to whom a consignment may be made, a person to whom goods are shipped for sale, or one to whom a carrier may lawfully make delivery in accordance with his contract of carriage, or one to whom goods are consigned, shipped, or otherwise transmitted"). The Court also cites <u>R. Franklin Unger, Trustee of the Ind. Hi-Rail Corp., debtor-Petition for Declaratory Order-Assessment and Collection of Demurrage of Switching Charges</u>, STB Docket No. 42030, 2000 STB Lexis 333, n.13, for the proposition that if the "<u>waybills</u> contain . . . language that would clearly establish or refer to an agency relationship," then the agency relationship is considered disclosed (emphasis added). <u>Id.</u> at 258 n.12. Nothing in the Court's rationale nor in the language of the ICCTA itself limits my ability to determine whether Novolog was a consignee solely to whether it was named as a consignee in the bill of lading.

The Court of Appeals specifically noted that the significance of any differences between a bill of lading and waybill was not addressed by the parties. Novolog does not argue that there is any meaningful distinction between the waybill and the bills of lading at issue here for purposes of assigning liability to the named consignee. The significance of a bill of lading is that it is a title document and in this case it is undisputed that Novolog did not have an ownership interest in

the freight.

The waybills submitted by CSX disclose that Novolog was the entity to whom the goods were consigned. Therefore, I will consider them as evidence that Novolog was a consignee. I will also consider the waybills to determine whether they provide evidence that Novolog was acting as an agent for another and gave CSX notice of Novolog's agency status.

### 3.    Sole Consignee

The waybills identify Novolog as the sole consignee. Novolog rebuts CSX's waybill evidence by pointing to bills of lading which identify two consignees. Novolog argues that the Court of Appeals held that it can be found presumptively liable only if Novolog were the "sole" consignee listed on the bill of lading. 502 F.3d at 250 ("[A] transloader or other such entity, if named on the bill of lading as the <u>sole</u> consignee, is presumptively liable for demurrage charges arising from unloading delays . . ."); <u>id.</u> at 254 ("we hold that an entity named on a bill of lading as the <u>sole</u> consignee, without any designations clearly indicating any other role, is presumptively liable for demurrage fees . . . On remand, the District Court should determine whether Novolog appeared as <u>the consignee</u> on the relevant bills of lading.") (emphases added). Novolog identifies several bills of lading which contain both a "Ship To" and "Sold To" field and argues that the presence of two "consignee" fields put CSX on notice that Novolog was a transloader or middleman.[13]

---

[13]     CSX argues that I may not consider the bills of lading Novolog attaches to its brief in opposition because Novolog has not confirmed whether these documents were ever provided to CSX and has not provided an affidavit attesting to the documents' authenticity. Novolog has attached a letter demonstrating that these documents were sent to CSX in discovery on November 22, 2005 and CSX in fact cites to NOV 158 in the Statement of Undisputed Facts accompanying its first Motion for Summary Judgment (D.E. No. 16, Attach. 3 ¶ 26). CSX has not presented any reason why I should question the documents' authenticity. Therefore, I will

Novolog attaches scores of bills of lading to its brief each of which lists Novolog in the Ship To field and a third party in the Sold To field; Steel Dynamics, Inc. is identified as the Shipper and CSX as the Carrier.  Of these, Novolog only identifies one which is related to a demurrage charge for which CSX seeks partial summary judgment but it does not in fact correspond.[14]  CSX identified railcar NYC 607086 on OIB 8818431 as a railcar for which unloading demurrage is due and produced waybill number 810753 (CSX 699/700) in support thereof.  That waybill only lists Novolog in the consignee field.  Novolog claims that the bill of lading bates-stamped NOV-0312 corresponds to NYC 607086 and contains two "consignee" fields: the Ship To field indicates Novolog and the Sold To field indicates Duferco Steel, Inc. However, this bill of lading does not correspond to railcar NYC 607086; rather the bill of lading is for railcar NYC 609328.  Thus, it is not evidence that CSX had knowledge of a second consignee for this railcar.

Although Novolog has not matched a bill of lading to a specific demurrage charge for which plaintiff seeks partial summary judgment, I find Novolog's evidence suggests that all bills of lading including those for which CSX seeks to recover demurrage charges listed Novolog as a Ship To entity with another party as the Sold To entity.  Construing the facts in the light most favorable to Novolog, this could mean that CSX was on notice that Novolog was acting as an agent of another.

The Court of Appeals suggested that the clearest evidence of an agency relationship

consider these bills of lading.

[14]     Novolog identifies three other railcars, CSXT 704656, NYC 602278 and CSXT 482734.  According to their corresponding OIB 1243228, these cars were returned within the two-day time window allowed under the tariff so Novolog was not charged any demurrage.

would be a notation on the bill of lading that Novolog is the "agent of" another. The Court also inherently suggested by repeating multiple times in its holdings that an indication on the bill of lading that Novolog was not the "sole" consignee also evidences an agency relationship. As the Court of Appeals noted, and as discussed <u>supra</u>, a consignee is "[o]ne to whom a consignment is made [; p]erson named in bill of lading to whom or to whose order the bill promises delivery." Black's Law Dictionary (6th ed. 1990).

Here, the bills of lading identify Novolog as the Ship To party, <u>i.e.</u> a party to whom the bills promise delivery, confirming Novolog is a consignee. The bills of lading also identify a second entity as the Sold To party. The Sold To party may also be a consignee if it is the party to whom the bill promises delivery. Thus, Novolog is not the "sole" consignee on these bills of lading. At the very least, this raises an inference that Novolog was acting as an agent of the Sold To party. In fact, it is difficult for me to think of any other explanation, other than Novolog was acting as the Sold To's agent, to describe this relationship.

It is plaintiff's burden on its motion for summary judgment to show that there is no material question of fact that Novolog was not acting as an agent for another or that CSX did not have timely notice that Novolog was acting as an agent for another. A reasonable jury could find that CSX had timely notice that Novolog was acting as an agent for another if CSX received the bills of lading prior to delivery and they identified Novolog as the Ship To party and another entity as the Sold To party. Therefore, Novolog has raised a genuine issue of material fact as to whether the bills of lading underlying CSX's claims for unloading demurrage indicated that Novolog was the Ship To party acting as an agent of the Sold To party. I will deny CSX's motion for unloading demurrage charges. At trial, in order to avoid liability it is Novolog's

burden to prove that it notified CSX in writing prior to delivery of its agency status. Novolog could make this showing by introducing waybills or bills of lading--corresponding to actual unloading demurrage charges for which CSX seeks damages--naming Novolog as the Ship To entity and a third party as the Sold To entity.

### 4. Waybills Dated More Than "One Week to Ten Days" Prior to the Placement Date

As discussed above, Underwood uses railcar CSXT 482818 as an example of how to link railcars found on the waybill and the OIB. Underwood explains that the waybill date precedes the placement date found on the OIB by "approximately one week to ten days" because that "is what would have been expected due to transit time." Underwood states that "each and every railcar" for which CSX moves for summary judgment for unloading demurrage can "similarly" be matched to a waybill.

Novolog argues that CSX inadequately explained the connection between twenty-seven (27) railcars whose waybills are dated more than "one week to ten days" prior to their placement date. Specifically, Novolog identifies:

- The first nineteen (19) railcars listed on CSX's OIB 1852201 spreadsheet (Pl. Br., Exh. A Underwood, Exh. 3, at CSX-S 41) have placement dates between twenty-two (22) and approximately one month after the waybill dates. The total demurrage associated with these 19 railcars is $23,880.

- The only railcar on CSX's OIB 1963966 spreadsheet (Id. at CSX-S 42) has a placement date that is twenty-eight (28) days after the waybill date. CSX seeks $3,600 in demurrage for this railcar.

- Seven railcars (CSXT 483025, CSXT 704801, CSXT 705082, CSXT 705089, NYC 607086, NYC 60803, and NYC 609324) on CSX's OIB 8818431 (Id. at CSX-S 35-38) have a placement date fourteen (14) days after the alleged waybill dates. The total for these railcars is $8,690.

Novolog argues that this disconnect in time raises a material question of fact as to whether the demurrage charges contained in those OIBs are supported sufficiently by their alleged corresponding waybills.

In its reply, CSX supplements the affidavit of John Underwood with additional testimony that seeks to explain the longer period of time taken to place these trains. He states that not all trains would be delivered within "one week to ten days" of the waybill date and that so-called "unit trains," which Underwood claims these appear to have been, could require a transit time of about 14-30 days.

This gap in time presents a genuine issue of material fact to be resolved by the jury. A reasonable jury could find that the waybills identified above do not adequately support the corresponding OIB because there is insufficient evidence upon which to draw a connection between the two documents due to the lengthy gap in time. Even assuming Underwood's explanation is true, it does not explain the delay with respect to the sole train identified on OIB 1963966. CSX will need to provide evidence at trial connecting these trains to the OIBs and Novolog will have an opportunity to rebut this evidence. Therefore, I will also deny plaintiff's motion for partial summary judgment for this additional reason.

### B. Loading (Consignor) Demurrage

CSX also moves for entry of partial summary judgment for $45,672.00 in loading, or

consignor, demurrage. It is undisputed that Novolog ordered empty railcars from CSX to be delivered at the Novolog port so that Novolog could then load the railcars with imported steel and transport the steel to domestic destinations. The OIBs submitted by CSX show that Novolog failed to load and release the railcars within the two day time period allotted by CSX's tariff. Item 8070(G) of CSX Tariff 8100 provides that "[u]nless otherwise advised, in WRITING, that another party is willing to accept responsibility for demurrage, consignor at origin or consignee at destination will be responsible for the payment of demurrage charges" (emphasis in original). The tariff defines "consignor" as "[t]he party in whose name a car(s) is ordered; or the party who furnishes forwarding directions." The Underwood affidavit states that "CSX Tariff 8100 imposes [loading demurrage] liability upon the consignor" and that "the key piece of information necessary to determine responsibility for loading demurrage is the identity of the party ordering the railcars." Underwood ¶ 31 and 33. CSX seeks loading demurrage charges totaling $45,672.00 with respect to five OIBs directed to Novolog and dated between December 2002 and November 2004[15]: 6200510, 8818430, 1963967, 2389015 and 1719340.

With respect to loading demurrage, the Court of Appeals said, "we refrain from announcing a holding because the question was not fully addressed or briefed, but we will vacate the District Court's grant of judgment on this claim as well and remand it for further consideration in light of our holding regarding consignee liability." 502 F.3d at 250. The Court also stated,

---

[15]     The Underwood affidavit states that "[f]rom December of 2002 through August of 2003, Novolog received monthly Original Incidental Bills as the named consignee, for failure to return rail cars in a timely manner, and assessing demurrage for failure to load ordered cars in a timely manner." Underwood ¶ 9. However, CSX attached OIB 1719340 dated November 4, 2004 for loading demurrage. Underwood, Exh. 5.

Although consignor liability is not regulated by 49 U.S.C. § 10743 or an analogous statutory provision, we see no reason why the principles applicable to consignee liability under the statute should not be made equally applicable to consignor liability. If the analogous rule governed, the entity named as consignor or shipper on the bill of lading would be liable unless it had ordered the empty railcars as an agent of another and had so notified the carrier in writing at the time of the request or unless, if another entity had designated it as consignor, it notified the carrier prior to shipment . . . On remand, the District Court should determine whether Novolog appeared as the shipper/consignor on the relevant bills of lading. The District Court may also find it necessary to determine whether Novolog was an agent in the instances in which it appeared as shipper or consignor in the bills of lading and, if so, whether it appropriately notified CSX of the relationship.

502 F.3d at 263.

"As a general rule, the shipper-consignor is primarily liable for all charges associated with the shipment of cargo, including demurrage." CSX Transp., Inc. v. Meserole Street Recycling, 618 F. Supp. 2d 753, 766 (W.D. Mich. 2009) (citing Southern Pacific Transp. Co. v. Commercial Metals Co., 456 U.S. 336, 342-43, 102 S. Ct. 1815 (1982)); 4 Saul Sorkin, Goods in Transit § 25.02[3] (Matthew Bender 2009). "To determine who is the shipper-consignor the Court first looks to the bill of lading, 'bearing in mind that the instrument serves both as a receipt and as a contract.'" Meserole Street Recycling, 618 F. Supp. 2d at 766 (quoting Louisville & Nashville R.R. Co. v. Central Iron & Coal Co., 265 U.S. 59, 67, 44 S. Ct. 441 (1924)). However, "[t]he initial presumption of liability that attaches to . . . [a] shipper[] or consignor[] is not absolute." Meserole Street Recycling, 618 F. Supp. 2d at 767 (citing Louisville & Nashville R.R. Co., 265 U.S. at 67-68; Southern Pacific, 456 U.S. at 343). The Supreme Court held that "this inference may be rebutted, as in the case of other contracts. It may be shown, by the bill of lading or otherwise, that the shipper of the goods was not acting on his own behalf; that this fact

24

was known by the carrier; that the parties intended not only that the consignee should assume an obligation to pay the freight charges, but that the shipper should not assume any liability whatsoever therefor; or that he should assume only a secondary liability." Louisville & Nashville R.R. Co., 265 U.S. at 67-68.[16]

### 1. CSX's Reliance on OIBs

Novolog argues that CSX has not submitted the bills of lading or waybills demonstrating that Novolog was the shipper/consignor of the railcars ordered and therefore its claims should be dismissed. However, CSX has submitted the OIBs for all of the shipper demurrage charges it seeks; each OIB identifies Novolog as the shipper, what date the railcar was placed and what day it was released. This evidence is sufficient as an initial matter to prove that Novolog was the shipper and that Novolog delayed the return of the railcars it ordered. Novolog presents no evidence creating a disputed issue of material fact on this point. Novolog, while insisting that CSX can only prove its claim by producing waybills or bills of lading, has not pointed to a single waybill or bill of lading which contradicts the OIBs. Indeed, Novolog has not even argued that the information contained in the OIBs is inaccurate or that it was not the shipper.

### 2. September 12, 2003 E-Mail

Novolog also argues that CSX had written notice that Novolog was acting as an agent for others when Novolog ordered the railcars. Novolog presents an email dated September 12, 2003

---

[16]     CSX argues that I should not apply, as the Court of Appeals suggests, § 10743 to loading (consignor) liability. I find that the Supreme Court's holding, as discussed supra, in Louisville directly addresses the issue of the presumption of consignor liability and the consignor's ability to rebut that presumption when it found that a consignor may rebut the presumption of loading demurrage liability by demonstrating that it had provided prior written notice that it was acting as the agent of another.

which was sent from David Reid of Novolog to Marion Goforth of CSX. This email seeks to absolve Novolog of liability for demurrage invoices from CSX Novolog received as of that date. These charges accrued during the early part of 2003. Certainly this e-mail is insufficient evidence that Novolog provided CSX notice in advance of charges which accrued prior to the date the e-mail was sent. Furthermore, the email does not indicate that Novolog was acting as the agent of any railcars ordered subsequent to September 12, 2003. The email makes no mention of railcars it ordered for delivery and whether it was acting as an agent for the purchaser when ordering those railcars. Therefore, the September 12, 2003 email cannot rebut a presumption of loading demurrage liability.

### 3. "A/O" Designation on Waybills

Novolog points to several waybills which reference Novolog as the "A/O" of the shipper. Novolog's brief explains that "A/O" stands for "agent of" but does not attach a supporting affidavit. While Novolog has not demonstrated that these particular waybills correspond with any of the OIBs for which CSX seeks to recover, CSX does not argue that the waybills do not correspond with those OIBs. Novolog has not identified the date it ordered the railcars or when CSX received the waybills which identify Novolog as an "agent of" the third party. CSX states that "these waybills were prepared after the demurrage had accrued" but cites no documents or other evidence to support this claim. Thus, I cannot determine whether CSX received these waybills and therefore whether CSX had notice that Novolog was an "agent of" another prior to the railcars being delivered.

Despite these deficiencies, I find that these waybills create a material issue of fact as to whether CSX had knowledge prior to Novolog ordering the railcars that Novolog was acting as

an "agent of" another.  I will deny plaintiff's motion for summary judgment with respect to loading demurrage.  However, in order to avoid liability on these loading demurrage charges, at trial Novolog will need to provide the "A/O" waybills corresponding to the railcars for which CSX seeks to recover, evidence those waybills were received by CSX prior to the railcars being delivered and evidence supporting the contention that "A/O" means "agent of."

An appropriate Order follows.